**In re Ivy Marsh WALKER.**

Supreme Judicial Court of Maine.

Argued March 17, 1988.
Decided April 22, 1988.

James VanR. Springer (orally), Dickstein, Shapiro & Morin, Washington, D.C., Lewis A. Holman, Yarmouth, for Springers.

E. Stephen Murray, Michael L. Parker (orally), Murray, Plumb & Murray, Portland, for Ferragamo.

Margot Joly (orally), Freeport, for Walker.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

James VanR. and Carol M. Springer appeal from a September 30, 1987, order of

the Cumberland County Probate Court directing Stephen Walker, conservator for Ivy Marsh Walker, his mother, to negotiate with the Springers and with Paul Ferragamo to obtain the highest unconditional cash price for property on Chebeague Island, owned in joint tenancy by Stephen Walker and Ivy Marsh Walker. Paul Ferragamo, allegedly the ultimate purchaser of the property, and Stephen Walker are the appellees.

The Springers contend that the Probate Court exceeded its jurisdiction or abused its discretion by disapproving their earlier contract signed with Stephen Walker to purchase the Walkers' property and ordering, without further Probate Court supervision or involvement, further negotiations in order to secure the highest possible sales price. We find no impropriety in the Probate Court's order and affirm.

On June 16, 1986, Ivy Marsh Walker was adjudged incapacitated and her son, Stephen Walker, was appointed her guardian and conservator pursuant to 18–A M.R.S.A. §§ 5–304 and 5–410 (1981 & Supp.1987). Ivy and Stephen each owned, as joint tenants, a one-half undivided interest in real estate on Chebeague Island. The joined letters of guardianship and conservatorship included the limitation that this property, Ivy's half of which comprised most of her estate, was not to be sold unless authorized by the Probate Court.

On August 28, 1987, Stephen petitioned the Probate Court for license to sell the Chebeague Island property to James and Carol Springer in order to finance Ivy's care at a nursing facility. Stephen had negotiated a sales contract with the Springers on August 21 providing for a purchase price of $175,000. On September 21, 1987, the probate judge granted the petition, but several minutes later, upon review of the file and before his approval had been docketed, he revoked his order.

By an order entered on September 30, 1987, the probate judge acknowledged that Paul Ferragamo had expressed a willingness to make a higher offer than the Springers and had objected to court approval of the sale of the property to the Spring-

ers. The September 30 order directed Stephen Walker to negotiate with the Springers and Ferragamo until 12:00 noon on October 7, 1987, for the "highest unconditional cash sales price" for the Chebeague Island property. The Probate Court's order authorized Stephen to conclude the sale without further court approval. The Springers made no motion to amend the order nor did they move to set aside the sale that they allege was made to Ferragamo.

The Maine Probate Code confers upon probate courts broad authority to exercise, "for the benefit of the [ward] and members of his household, all the powers over his estate and affairs which he could exercise if present and not under disability, except the power to make a will." 18–A M.R.S.A. § 5–408 (1981 & Supp.1987). Pursuant to this provision and section 5–422, which provides that a probate court must approve all transactions when the conservator has a conflict of interest with his or her ward, the Probate Court exercised its supervisory power in order to protect the interests of the ward, Ivy Marsh Walker. It did so by first disapproving a sale of the jointly-owned property to the Springers apparently in the knowledge that a more favorable offer was available. The court then ordered the conservator to seek bids from the two potential buyers for the purpose of securing the highest sales price. Although the Probate Court could have continued its supervision over the ultimate sale, the Springers failed to move to amend the order to seek continuing supervision, and we cannot say that the September 30 order authorizing the sale "without further court approval" constituted an abuse of discretion.

The Springers attempt to buttress their argument by urging that the Probate Court's order resulted in a sale to Ferragamo that was less favorable to the conservatorship estate than an offer they tendered on October 5, 1987. Although the record does include a proposed amendment to the Springers' original offer, it contains nothing concerning the sale to Ferragamo that transpired pursuant to the September 30

order, and no motion was made to set aside that sale. Since the record is not adequate to permit a comparison of the Springers' amended offer and the terms of the sale to Ferragamo, we have no basis for looking beyond the September 30 order to determine whether the court abused its discretion by failing to protect the ward's interests. That order, on its face, was not improper.

The entry is:

Judgment affirmed.

All concurring.